UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

SHANEA E. MORRIS

              Plaintiff,        1:16-CV-00973(MAT)

   -v-                           **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security[1],

              Defendant.
_____

## INTRODUCTION

Shanea E. Morris ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Commissioner's decision is reversed, Plaintiff's motion is granted to the extent that the matter is remanded solely for calculation and payment of benefits, and Defendant's motion is denied.

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

**PROCEDURAL BACKGROUND**

On November 3, 2011, Plaintiff protectively filed for DIB, alleging disability beginning April 11, 2011. Administrative Transcript ("T.") 122-24. The claim was initially denied on March 26, 2013, and Plaintiff timely requested a hearing. T. 68-81. A hearing was conducted via video teleconference on September 19, 2012, in Manhattan, New York by administrative law judge ("ALJ") Robert Dorf, with Plaintiff appearing with her attorney in Jamestown, New York. T. 22-42.

The ALJ issued an unfavorable decision on September 28, 2012. T. 8-21. Plaintiff timely requested review of the ALJ's decision by the Appeals' Council. T. 7. The Appeals Council denied Plaintiff's request for review on February 12, 2014, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff instituted a civil action in this Court, and on October 31, 2014, this Court remanded the claim for further administrative proceedings. *See Morris v. Colvin*, Case No. 14-cv-223-RJA, Docket No. 14.

On remand, the Appeals Council vacated the ALJ's decision and remanded the matter for further consideration and development. T. 675-81. On November 23, 2015, a second video teleconference hearing was conducted in Buffalo, New York by ALJ William M. Weir. Represented by her attorney, Plaintiff appeared via video teleconference from Jamestown, New York. Vocational expert ("VE")

Michele Erbacher testified in person and medical expert ("ME") Haddon Christopher Alexander, III, M.D. ("Dr. Alexander") testified via telephone. T. 1032-82. On October 11, 2016, ALJ Weir issued an unfavorable decision. T. 560-80. This action followed.

## THE ALJ'S DECISION

On remand, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. T. 566. At step two, the ALJ determined that Plaintiff had the "severe" impairment of fibromyalgia. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Although fibromyalgia is not a listed impairment in appendix 1, the ALJ determined whether it medically equaled a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or medically equals a listing in combination with at least one other medically determinable impairment.) T. 568-69.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), with the following additional limitations: no climbing ladders, ropes and scaffolds;

3

only occasionally crawl, crouch, kneel, bend, stoop, and climb stairs and ramps; no work at unprotected heights or around dangerous machinery; no engagement with complex work, defined as work with multiple or simultaneous tasks or tasks that involve threats to property or life. T. 569.

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. T. 573. At step five, the ALJ relied on the VE's testimony to determine that a person of Plaintiff's age, and with her education, work experience, and RFC, could perform the requirements of the following representative jobs that exist in significant numbers in the national economy: Labeler (Dictionary of Occupational Titles ("DOT") No. 920.687-126, unskilled, SVP 2, light exertional level); Routing Clerk (DOT No. 222.687-022, unskilled, SVP 2, light exertional level); and Storage Facility Rental Clerk (DOT No. 295.367-026, unskilled, SVP 2, light exertional level). T. 575. The ALJ accordingly found that Plaintiff had not been under a disability, as defined in the Act, since the application date. *Id.*

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The

district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand for calculation and payment of benefits is warranted because the ALJ failed to properly evaluate the opinion of treating pain management physician, Dr. Billy R. Carstens ("Dr. Carstens"). In particular, Plaintiff argues that the ALJ: (1) failed to give proper weight to the disability-supporting opinion; (2) failed to give good reasons for rejecting the disability-supporting opinion; and (3) failed to properly evaluate the objective evidence in Dr. Carstens' treatment notes.

5

For the reasons discussed below, the Court agrees with Plaintiff that, under the applicable regulations, the ALJ was required to afford controlling weight to Dr. Carstens' opinion. Moreover, because Dr. Carstens' opinion establishes that Plaintiff suffers from disabling limitations, remand of this matter solely for calculation and payment of benefits is warranted.

## I. Evaluation of Dr. Carstens' Opinion

Plaintiff contends that the ALJ failed to properly evaluate Dr. Carstens' disability-supporting opinion. Under the Commissioner's regulations in place at the time the ALJ issued the operative decision, a treating physician's opinion is generally entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger*, 335 F.3d at 106. An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). The ALJ is required to consider "the length of the treatment relationship and the

6

frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6). However, the ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31–32).

In this case, Dr. Carstens, Plaintiff's treating pain management physician, completed a Physical Residual Functional Capacity Questionnaire on September 10, 2012. T. 498-502. Dr. Carstens reported he had been treating Plaintiff since 2009 and that Plaintiff suffered from pain in her neck, upper, lower, and mid back, and all four extremities, with pain described as tender, burning, penetrating, exhausting, aching, tiring, throbbing, continuous, nagging, and miserable, and is exacerbated by activities of daily living. Dr. Carstens further reported Plaintiff's pain severity was typically at a seven or eight on a scale of ten. T. 498. He opined that Plaintiff is incapable of

7

tolerating even "low stress" jobs due to her debilitating anxiety and depression, and that these psychological conditions contribute to the severity of her physical symptoms and functional limitations. T. 499.

Regarding work-related physical activities, Dr. Carstens opined Plaintiff can sit for up to fifteen minutes at one time, before needing to get up, and stand for ten to fifteen minutes before needing to sit down or walk around. *Id.* He further opined that in a normal eight-hour working day, Plaintiff can sit for a total of less than two hours and stand for a total of less than two hours. T. 500. He continued that Plaintiff must walk around for five minutes at a time, every fifteen minutes and that she must be permitted to shift positions at will, including the option to take unscheduled breaks. *Id.* Dr. Carstens opined Plaintiff should elevate her legs at less than thirty degrees, for at least fifty percent of the time, if sitting for a prolonged time. He opined Plaintiff could occasionally lift or carry less than ten pounds, could rarely lift or carry ten pounds, and should never lift or carry twenty pounds or more. *Id.* Regarding movement of Plaintiff's head, Dr. Carstens opined she could occasionally look down, turn her head to the left or right, look up, or hold her head in a static position. He further stated that Plaintiff could occasionally climb stairs, rarely twist, and should never stoop, bend, crouch, squat, or climb ladders. T. 501. Dr. Carstens also

opined Plaintiff would have significant limitations with reaching and specifically should not reach overhead, and that she could grasp, turn and twist objects with her hands only ten percent of the time and do fine manipulations with her fingers twenty percent of the time. Finally, Dr. Carstens opined Plaintiff would be absent from work more than four days per month due to her impairments or treatment and that she should avoid temperature extremes, humidity, noise, dust, fumes, gases and hazards. T. 501-02.

In his decision, the ALJ assigned "reduced weight" to Dr. Carstens' treating source statement. T. 572. The ALJ found Dr. Carstens' opinion inconsistent with the balance of the evidence in the record, including Plaintiff's reported activities of daily living and the opinions of ME Dr. Alexander, consultative examiner Dr. Samuel Balderman, consultative psychiatrist Dr. Sandra Jensen, and reviewing psychiatrist Dr. Daniel Mangold. *Id.* It's important to note that of the opinions relied upon by the ALJ, only Dr. Balderman and Dr. Jensen examined the Plaintiff - on a single occasion. And further, that the opinions of Dr. Alexander and Dr. Mangold were based upon non-examination of the Plaintiff. Furthermore, the ALJ found that although Dr. Carstens provided a range of positive clinical findings, including an antalgic gait, positive straight-leg raising tests, and diffuse tender points, there was minimal objective evidence in the form of radiology

9

reports and no sustained treatment with an orthopedist or rheumatologist. *Id.*

As discussed further below, the ALJ's reasons for discounting Dr. Carstens' opinion are unsupported by the record and erroneous. The ALJ's observation that there was minimal objective evidence of Plaintiff's fibromyalgia in the form of radiology reports is inconsistent with the testimony of the Commissioner's own ME, Dr. Alexander, who merely testified, but had never examined the Plaintiff. Furthermore, Plaintiff's reported activities of daily living comport with Dr. Carstens' opinion. And finally, the sum of the opinions offered by consultative and reviewing doctors do not constitute the substantial evidence required to discount Dr. Carstens' opinion, which was supported by six years of consistent treatment for fibromyalgia, as of the date of the final hearing.

### A. Fibromyalgia Typically Does Not Produce Objective Evidence

At the hearing, ME and reviewing rheumatologist Dr. Alexander testified that fibromyalgia is "a pain syndrome. The pain is real, but there is no objective evidence to indicate significant objective limitation in function." T. 521. The ALJ failed to take the nature of fibromyalgia into account in his decision, and instead relied upon the "minimal objective evidence in the form of radiology reports" as a reason to discredit Dr. Carstens' opinion. T. 572. This was error. "As a general matter, 'objective' findings

are not required in order to find that an applicant is disabled." *Green-Younger,* 335 F.3d at 108 (acknowledging that fibromyalgia is a disease that "eludes [the] measurement" of objective evidence.). Rather than rely on objective medical evidence in fibromyalgia cases, "[s]ubjective *pain* may serve as the basis for establishing disability." *Id.* (emphasis in original)(citation omitted) (quoting *Donato v. Secretary of Dept. of Health and Human Services of U.S.,* 721 F.2d 414, 418-19 (2d Cir. 1983)). In this case, the record is replete with Plaintiff's complaints of debilitating pain, supportive of Dr. Carstens' opinion. Accordingly, the purported lack of objective evidence did not constitute a good reason to afford less than controlling weight to Dr. Cartsens' opinion. *See Davidow v. Astrue*, No. 08-CV-6205T, 2009 WL 2876202, at *4 (W.D.N.Y. Sept. 2, 2009) (lack of clinical findings in treating physician's report was not a good reason to discount his opinion regarding the impact of plaintiff's fibromyalgia, in part because "[f]ibromyalgia has been recognized as a disorder that is not easily detected with standard clinical tests").

    **B.   Plaintiff's Activities of Daily Living Support a Finding of Disability**

The ALJ's contention that Plaintiff's activities of daily living are inconsistent with Dr. Carstens' opinion lacks support in the record. In 2009, Plaintiff began pain management treatment with Dr. Carstens at Jones Memorial Hospital's Pain Management Clinic and continued to be seen at this clinic approximately every month,

on an as-needed basis, up to the date of the 2015 hearing. T. 498. Treatment notes from the clinic show Plaintiff consistently complained of neck and back pain, as well as bilateral lower extremity pain. T. 344, 359, 368, 371. During the relevant period, Plaintiff consistently reported her pain at a level seven or above on a pain scale of one to ten. T. 329, 331, 333, 340, 342. From the beginning of Plaintiff's treatment by Dr. Carstens, he noted that she had a "self care and mobility deficit" as a result of her physical impairments. T. 327. Plaintiff consistently reported difficulty in her day-to-day life to Dr. Carstens, telling him for example that she suffered from burning pain in her legs if she stood for more than a few minutes (T. 329) and that she was able to engage in her daily activities slowly and not "in a timely fashion" (T. 333). Dr. Carstens' treatment notes specifically indicate that Plaintiff's "activities of daily living are severely affected by her present pain condition." T. 342.

Plaintiff's testimony at the 2015 hearing was consistent with her reports to Dr. Carstens. Plaintiff stated that she lives alone, but receives help from her daughter with cleaning, sweeping, and mopping. When she does clean, Plaintiff testified it takes her a long time and she must take many breaks. T. 535. Plaintiff told the ALJ that activities such as sweeping cause her arms to become tender, hurt and have a burning sensation. T. 537-38. Plaintiff also testified she has burning sensations in her legs that seem to

be getting worse. The burning sensations are brought on from standing for more than ten minutes at a time or from walking more than one block. T. 537. Plaintiff testified she has good days and bad days. On bad days, she is unable to move; on good days she takes breaks and lays down with a heating pad for fifteen minutes at a time, at least twenty times throughout a waking day. T. 538-39. Plaintiff also told the ALJ that her daughter does her grocery shopping for her, but when she did her own grocery shopping, she needed a wheelchair. T. 542.

In his decision, the ALJ stated without further elaboration that Dr. Carstens' opinion was "inconsistent with . . . [Plaintiff's] reported activities of daily living." T. 572. This conclusion is unsupported by the record. The record reveals Plaintiff has consistently reported difficulty engaging in her activities of daily living due to her pain. She reported, and Dr. Carstens' notes confirm, that she was unable to walk for more than a few minutes due to pain and that, on some days, she was unable to engage in any meaningful activity. This Court has noted that "[i]n cases where fibromyalgia is the alleged disability, a claimant's testimony, regarding her symptoms from the disorder, should be given increased importance in the ALJ's determination of whether the claimant is disabled." *Davidow*, 2009 WL 2876202 at *5. Here, the ALJ's unsupported statement that Dr. Carstens' opinion was inconsistent with Plaintiff's reported activities of daily living

13

failed to comply with this standard. *See also Morseman v. Astrue,* 571 F. Supp. 2d 390, 397 (W.D.N.Y. 2008) (ALJ should credit Plaintiff's reports where "[t]he record indicates that Plaintiff's reports of pain have been consistent throughout the claimed period of disability").

**C. Weight to be Given to Opinions of Consultative and Reviewing Doctors**

The ALJ also gave less than controlling weight to Dr. Carstens' opinion because it was allegedly inconsistent with the opinions of Drs. Alexander, Balderman, Jensen, and Mangold. The Second Circuit has expressly stated in the context of a claimant with fibromyalgia that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013). With respect to Plaintiff's physical impairments, Dr. Balderman opined in his source statement that Plaintiff had "minimal physical limitations." T. 408. This vague statement is inconsistent with the medical record and does not warrant rejection of Dr. Carstens' opinion. "While the opinions of treating or consulting physicians need not . . . be reduced to any particular formula [they cannot be] so unduly vague as to render [them] useless." *Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000) (finding opinion impermissibly vague where it used the terms "moderate" and "mild" without additional information).) Dr. Balderman's opinion is comparable to the opinion the Second Circuit found impermissibly vague in *Selian v. Astrue,*

708 F.3d 409, 421 (2d Cir. 2013). Furthermore, the opinion that Plaintiff "has minimal physical limitations" is in sharp contrast with both Plaintiff's testimony and the treatment records and opinion of Plaintiff's treating physician, Dr. Carstens. Such a discrepancy from a one-time examination by a non-treating phyiscian fails to support the ALJ's conclusion that Dr. Balderman's opinion was consistent with the overall medical evidence.

Reviewing physician Dr. Alexander's opinion also fails to support the ALJ's rejection of Dr. Carstens' opinion. Dr. Alexander never examined Plaintiff. Moreover, his testimony made it clear that he considered himself "restricted to objective evidence" and that he was discounting Plaintiff's fibromyalgia complications on that basis. *See* T. 522-24. However, and as discussed above, the case law in this Circuit is well-established that subjective evidence is of paramount importance in fibromyalgia cases and that it cannot simply be discounted where it is unsupported by objective findings. *See Green-Younger*, 335 F.3d at 108.

The Court further notes that a review of the hearing transcript shows that the word "[inaudible]" appears forty times during Dr. Alexander's testimony. T. 516-29. Moreover, Plaintiff's counsel noted that Dr. Alexander's testimony was difficult to hear. T. 522. While an occasional, slight gap in a hearing transcript may be permissible, this Court finds the volume of omissions in Dr. Alexander's testimony, especially during Dr. Alexander's

assessment of Plaintiff's abilities (T. 520-22) renders the ALJ's reliance on his opinion erroneous. *See, e.g., Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996) (court could not find that ALJ's conclusions were supported by substantial evidence where portion of the testimony of the medical expert was missing).

As to Plaintiff's mental impairments, Dr. Carstens during her visits observed and noted that Plaintiff had anxiety and depression and as a result opined that she was incapable of even low stress work. T. 499. The ALJ discredited these observations, stating that they were inconsistent with Drs. Jensen and Mangold's opinions. T. 573. However, the ALJ also inproperly characterized Dr. Cartstens' opinion that Plaintiff's pain would interfere with her ability to maintain concentration and attention and her need for more than four absences per month from work as "psychological limitations," and disregarded them for the same reason. T. 573. This was error. Dr. Carstens is a pain management specialist and is fully qualified to opine as to the impact of Plaintiff's pain on her ability to concentrate and maintain attention. The one-time examination by Dr. Jensen (and Dr. Mangold's adoption of Dr. Jensen's observations) is insufficient to question Dr. Carstens' observations and conclusions, which were developed over an extensive treating relationship with Plaintiff, starting in 2009 and continuing through 2015.

Moreover, the ALJ offered no support for his conclusion that Dr. Carstens' opinion with respect to absences was based on

16

psychological factors. Social Security Ruling ("SSR") 12-2P expressly acknowledges that the symptoms of fibromylagia "wax and wane so that a person may have bad days and good days." SSR 12-2P, 2012 WL 3104869 (July 25, 2012). This emphasizes the importance for an ALJ to "consider a longitudinal record whenever possible" in cases of fibromyalgia. *Id*. In this case, the ALJ failed to take into account the likely explanation that Dr. Carstens based his opinion on Plaintiff's need for absences on her fibromyalgia symptoms and not on her psychological impairments. Accordingly, his failing to articulate good reasons for discounting this portion of Dr. Carstens' opinion constituted error.

For all the reasons set forth above, the Court finds that the ALJ's decision to afford Dr. Carstens' opinion less than controlling weight was erroneous. Dr. Carstens' opinion was well-supported and consistent with his long-term treatment of Plaintiff, and was entitled to controlling weight under the applicable treating physician rule.

**II. Remedy**

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. Remand solely for calculation and payment of benefits is appropriate where the record persuasively demonstrates the claimant's disability, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980), and there is no reason to conclude that additional evidence exists that might support the Commissioner's

17

claim that the claimant is not disabled, *Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004).

For the reasons set forth above, the Court finds that the ALJ's decision to give less than controlling weight to the opinion of Plaintiff's treating physician, Dr. Carstens, was legally erroneous and unsupported by substantial evidence. Had the ALJ given proper weight to Dr. Carstens' medical opinion, a finding of disability would have necessarily followed. Moreover, two separate hearings have already been held in this matter, and there is no reason to believe that any further development of the record is necessary or warranted. Accordingly, the Court finds that remand solely for the calculation and payment of benefits is warranted.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision was legally erroneous and is not supported by substantial evidence. It therefore is reversed. Accordingly, Defendant's motion for judgment on the pleadings (Docket No. 15) is denied, and Plaintiff's motion for judgment on the pleadings (Docket No. 11) is granted, and the case is remanded solely for the calculation and payment of benefits. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated: June 14, 2018
      Rochester, New York